JOHN I. REDICK ET AL., PLAINTIFFS IN ERROR, V. JAMES
M. WOOLWORTH, DEFENDANT IN ERROR.

**Contract:** CONSTRUCTION. The contract, as set up in the petition
and stated at length in the opinion, *Held,* Not void, as contra-
vening the provisions of any statute repugnant to justice against
the general policy of the common law, or as tending to impede
the due administration of justice.

ERROR to the district court for Douglas county. Tried
below before NEVILLE, J.

*Redick & Connell,* for plaintiffs in error.

*James W. Savage,* for defendant in error.

COBB, CH. J.

The plaintiffs, in and by their petition in the court be-
low, alleged that about the year 1874 the defendant, who
was then and still is practicing law in the city of Omaha,
put into the hands of Charles H. Sedgwick, who at that
time and until about the year 1877 was a practicing lawyer
in the said city, a certain claim or demand which he, said
defendant, had control of, against one Henry Tucker, with
the agreement and understanding between said defendant
and said Sedgwick that said Tucker should be forced into
bankruptcy, and if the said Sedgwick should be made as-
signee of said estate the said Sedgwick should attend to the
business as far as consistent with his said trust, and he,
said Sedgwick, should receive one equal half of all attor-
ney's fees charged and received by said defendant, and said
defendant was to receive one equal half of all commissions
charged and received by said Sedgwick as such assignee
when said estate should be finally closed; that in pursu-
ance thereof proceedings were commenced against said
Tucker in bankruptcy, and the said Sedgwick was made

assignee, and a long, tedious, and difficult litigation followed, and said Sedgwick took charge of the same and did the entire labor and business in connection therewith, and in all things said Sedgwick lived up to his said agreement, and all commissions received by him were divided between him and the said defendant, as well also as a retaining fee of five hundred dollars paid said defendant soon after said suit was commenced; that said cause was taken to the supreme court of the United States and there affirmed, which finally settled all litigation touching said estate; that about the month of April, 1878, the plaintiffs, with the knowledge and consent of said defendant, purchased of said Sedgwick his interest in all fees and commissions in said suit thereafter paid or to be paid to said defendant, and paid therefor about the sum of eight hundred dollars, and thereafter, with the consent of said defendant, said plaintiffs were to be subrogated to the rights of said Sedgwick therein; and that about the month of May, 1880, the said defendant received as further attorney's fees in said action the sum of about eighteen hundred dollars, all of which he retains, and refuses to account for or pay over to the plaintiffs or said Sedgwick said sum of money or any part thereof, though he has been often requested so to do, etc. Wherefore plaintiffs allege that he is justly indebted to them in the sum of one thousand and fifty dollars, etc.

The defendant for answer denied that he ever put into the hands of said Sedgwick any claim or demand against one Tucker with the understanding or agreement between said defendant and said Sedgwick that said Tucker should be forced into bankruptcy, or that said Sedgwick if made assignee of said estate should attend to the business as far as consistent with said trust, and he, said Sedgwick, should receive one equal half of all attorney's fees charged and received by said defendant, or that said defendant was to receive one equal half of said Sedgwick's commissions as charged and received by him as such assignee.   He further

denied that in pursuance of any such agreement or under-
standing proceedings were commenced against said Tucker
in bankruptcy, or that said Sedgwick took charge of or did
the entire labor or business in connection with a litigation
in connection with said bankrupt's estate, or that in all or
any matters connected with the same lived up to any
agreement alleged in said petition, or that all commissions
received by him were divided between him and defendant.
He also denied that said plaintiffs, with defendant's knowl-
edge or consent, purchased of said Sedgwick his interest in
all or any fees or commissions in said suit thereafter paid
or to be paid to said defendant, or that said plaintiffs were
to be subrogated to the rights of the said Sedgwick therein.
Defendant denied that he had received commissions to the
amount of $300 or $400, or that he is indebted to the said
plaintiffs in any sum whatever.

For a second and further defense the defendant alleged
that at the time the said Sedgwick was made assignee of
the said estate of said bankrupt, he, the said Sedgwick, ap-
plied to the defendant to sign the bond which as such as-
signee he was required to give; and that defendant did
thereupon sign the bond in such case made and provided,
and thereby became security that said Sedgwick should
faithfully perform his duties as such assignee and pay over
all moneys coming into his hands to the proper persons
and at the proper times; but the said Sedgwick did not
properly execute his trust as such assignee, and collected
moneys to the amount of $760 which he failed to pay over
as his duty required him to do, and finally left the state
of Nebraska and abandoned or was removed from his said
trust, and thereupon William L. Peabody was appointed
assignee in his place and stead; that the United States dis-
trict court for the district of Nebraska, sitting in bank-
ruptcy, upon due notice to the parties concerned, ascertained
the amount of the assets of said bankrupt estate which had
come to said Sedgwick's hands and was by him unaccounted

Redick v. Woolworth.

for as $760, and made an order on him to pay the same to said Peabody as assignee aforesaid, etc., and that defendant paid to said Peabody the said sum of $760 for said Sedgwick, and the said Sedgwick thereupon become liable to defendant for the repayment of such sum, and was so liable at the time of the pretended assignment to the plaintiffs in this action; but neither the said Sedgwick nor any person for him has paid the said sum or any part thereof. The defendant therefore claimed to set off the said sum of $760, with interest from the time of the payment thereof, against any sum, if any, which might be found due from defendant.

The said answer also contains a third and fourth defense, but which it is deemed unnecessary to further notice in this connection.

There was a reply on the part of the plaintiffs denying the several matters of defense set up in the answer.

There was a trial to a jury, a verdict for the defendant by direction of the court, a motion for a new trial overruled, a judgment for the defendant, and the cause brought to this court on error.

It appears from the bill of exceptions that the plaintiffs offered in evidence in their behalf a deposition of Charles H. Sedgwick. When they came to the sixth interrogatory, which was in the following words, "Int. 6. What was the understanding and arrangement between you and the defendant, if any, with reference to business or claims he might place in your hands?" the defendant objected, or rather renewed an objection to the said interrogatory that had been made at the taking of the deposition, on the ground that the said interrogatory was incompetent, irrelevant, immaterial, and improper, for the reason that it was "an attempt to prove a contract that was void as against public policy, and void as an attempt to impede the due administration of justice," which objection was sustained; and the answer of the witness, which was as follows, "I

was to have one-half of the fees, costs, and commissions in all such cases," was excluded. When offered, the same objection was made to interrogatories 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18, and was sustained.

It appears also from the bill of exceptions that upon the trial W. J. Connell, one of the plaintiffs, was sworn as a witness on behalf of the plaintiffs. After having testified that he was acquainted with the defendant and Charles H. Sedgwick, and to other facts introductory in their character, the witness had propounded to him by the party calling him the following question: "Q. What do you know about his (Sedgwick's) proposing to sell you a claim for law fees which he claimed to be entitled to in the case of Albert Tucker, bankrupt, where one Henry figured at a time when he was not assignee in bankruptcy?" Which question was objected to by counsel for the defendant as irrelevant and immaterial, for the reason that there is no evidence showing that any service had been performed or that any fees were due Mr. Sedgwick, and also for the reason that the only claim set up in the petition is for half of the fees as attorney and assignee, which, as alleged in the petition, were to be divided between the defendant and Sedgwick. Which objection was sustained and the evidence ruled out. The plaintiffs thereupon made a formal offer to prove by the witness then on the stand "that Sedgwick came to him, W. J. Connell, with a letter proposing to sell him his right to this Tucker claim for so much money, and that he (witness) afterwards suggested to John I. Redick that he buy it in company with him; that they did buy Sedgwick's claim under that contract set up in the petition, and paid him $930 in money for it; that before Redick and Connell would buy, at the suggestion of Redick, Connell went to see the defendant and had a long conversation with him about it, and told him they were going to buy Mr. Sedgwick's interest in that claim; that the defendant told him to buy it, and said he had no interest in that half of it, and

induced Redick and Connell to invest $930 in that claim." This testimony was objected to by defendant's counsel as the last above, and also on the ground that the only claim set up in the petition is an illegal claim and cannot be recovered, which objection was sustained, and the said evidence was ruled out.

There was other evidence tending to prove the facts stated in the petition offered by the plaintiffs and ruled out by the court on objections offered by the defendant; but as the law upon which the case must turn sufficiently arises upon the above, it is deemed unnecessary to add to the record already quoted.

There can be no doubt that if the claim of the plaintiffs as set up in their petition was founded upon an agreement to do something forbidden by law, or for the doing of which the law has fixed a penalty which has a tendency to prevent or impede the due administration of justice, is subversive of morality, or contrary to sound public policy, the testimony was rightly excluded, and there could be no recovery under the petition or upon the testimony offered. On the side of the defendant it seems to be taken as conceded that there was something unlawful or wrong in the things which, according to the petition, the defendant and the plaintiffs' assignor agreed to do; and the authorities cited are to the effect that a contract to do an unlawful, wrong, or immoral thing, or one against morality or good policy, will not be enforced in a court of law.

The case of *Waldo v. Martin*, 4 B. & C., 319, was: "Where A, who held an office for life in the gift of B, agreed with C to resign, and to procure the appointment for him, and C, in consideration thereof, agreed that A should have a moiety of the profits; A resigned, and through his influence C was appointed and executed a deed for the performance of the agreement. The agreement was not communicated to B. In covenant by A against C for not paying over to him a moiety of the profits of the office,

*Held*, That the agreement was a fraud upon B, and therefore illegal and void." By reference to the opinion of Abbott, C. J., in this case, it plainly appears that the case was not decided upon any question of public policy or the unlawfulness of the contract between A and C, except in so far as it was a fraud on Mr. Farrar who held the appointing power.

The case of *Bills v. Comstock*, 12 Met. (Mass.), 468, was where "a justice of the peace sentenced a prisoner whom he had convicted of larceny to pay a fine and costs, and, on his failure to pay them, delivered a mittimus to an officer, who, while conducting the prisoner to jail, took the promissory note of a third person for the amount of the fine and costs and his own fees, payable to the justice, and discharged the prisoner." Upon the suit brought by the justice on the note, it was held that the note was void for illegality of the consideration.

In the case of *Gray v. Hook*, 4 Coms. (4 N. Y.), 449, it was held that "where two persons apply to the governor of the state to be appointed to the same office, and it is agreed that one of them shall withdraw his application and aid the other in procuring the appointment, in consideration of which the fees and emoluments of the office are to be divided between them, such contract is illegal and void."

In the case of *Sharp and Sharp v. Teese*, 9 N. J. Law, 352, it was held that, "a note given by an insolvent debtor to two of his creditors in consideration of their withdrawing their opposition to his discharge under the insolvent act, is void, it being against the policy of the insolvent law."

In the case at bar, the petition alleges that the defendant furnished certain claims against a certain bankrupt merchant, in consideration of which the plaintiff's assignor agreed to furnish the labor and professional skill necessary to the successful prosecution of said claims in bankruptcy, that he would, if he could, procure himself to be elected assignee of said bankrupt, and that all fees and commissions,

Redick v. Woolworth.

both as attorney and as assignee, should be divided equally between the two.

Mr. Bump, in his work on the Law and Practice of Bankruptcy, p. 133, states the law to be that an attorney for a creditor may be chosen assignee of a bankrupt's estate, and he cites as authority for the statement two adjudicated cases: *In re Lawson*, 2 Bankruptcy R., 396, and *In re Barrell*, Id., 533 We are cited to no authority, nor am I able to find any to the contrary. I see nothing inconsistent in the duties of the two positions. The creditors by number and value have the selection of the assignee, and they alone are interested therein, and with their selection the bankruptcy court will not interfere, except for certain specified causes. It may be proper to speak of the position of assignee of a bankrupt estate as an office, but certainly only in the broadest and most comprehensive use of that term. It is not a public office. We are cited to no authority declaring it illegal for a person holding an office to bind himself for a lawful consideration to divide the fees of such office with another. Yet I think that it would be against public policy to treat the fees and emoluments of a public office, as such, as a proper subject of bargain and sale. But the reason for this does not apply to the fees of an assignee in bankruptcy, and I fail to see any good reason why, for a lawful consideration, such assignee could not legally obligate himself to divide his emoluments with another, as well as could a carpenter his contract price for building a house.

As I understand the petition in the case at bar, the defendant furnished the claims, or in other words, they were sent to him through the commercial agency, and defendant allowed Sedgwick to present, sue, and control them, using the name of the defendant as the attorney for the said claimants, though Sedgwick was the actual attorney. Accordingly there were two considerations on the part of Sedgwick for the agreement by the defendant to divide

the attorney's fees with him: *First,* His professional services as an attorney in earning the fees to be divided; and *Second,* The division by him, or agreement to divide with the defendant his fees or pay as assignee.  If either one of these considerations were void by reason of being in contravention of the provisions of any statute, opposed to any recognized principle of public policy, or that their enforcement would tend to the prevention or to impede the due administration of public justice, then the entire contract would be incapable of enforcement.  But I do not think that such grounds of objection or either of them can be sustained.

I therefore reach the conclusion that the trial court erred in excluding the deposition of Sedgwick.  It necessarily also follows that the court erred in rejecting the testimony and offer of testimony of W. J. Connell, the same being testimony proper for the consideration of the jury on the question of estoppel.

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.